Good morning, Your Honors. May it please the Court, Kurt Hermanson on behalf of Mr. Andrews. Your Honors, in this case, in 2012, the District Court granted Mr. Andrews' motion for a new trial because it found that Dr. Castellano's expert testimony would likely have resulted in an acquittal. And this was a bench trial. She was a psychologist who prepared a report at the time of sentencing, correct? She was a psychologist who prepared a report for sentencing, and then once Judge Reel saw the report, he made several comments about how that would have been highly relevant, and then she issued a supplemental report. And based on that, Judge Reel indicated that it probably would have resulted in an acquittal. Right, so he granted a new trial. Correct. Okay. So he granted a new trial for the reason that her testimony probably would have resulted in an acquittal. Okay. But then the District Court abused its discretion because it's irrational to, on the one hand, grant a new trial because her testimony probably would have resulted in an acquittal, but then to say I'm not going to. I thought there were two intervening psychiatric reports that came that were. Dr. Furstein, right? Correct. There are two government reports. One is a psychiatrist and another is a neurological examination. Right. Both of those reports conflict with Dr. Castellano's report. And so the government argues that, well, because that's changed circumstances. There's now a conflict, and they speculate that, well, maybe then he wouldn't grant a new trial. But the fact is that funds should have been given for her to then respond to those reports, and funds were never granted. She should have been given the opportunity to. . . Well, she had the opportunity. The claim didn't have the money, right? Right, and to get . . . But there was no financial affidavit filed, was there, to show indigency? There was, Your Honor. The government makes . . . Now when? It was not filed with the District Court but with the Probation Department and incorporated into the 2012 pre-sentence report, which the judge reviewed, before appointing the federal defender. Just a minute now. That was . . . that affidavit was filed when? I don't know that it was an affidavit, but when the pre-court . . . Well, isn't that what the CJA requires, an affidavit? I don't believe so, and the government hasn't cited . . . You don't believe so? Well, how is the court supposed to decide whether or not the person is qualified for CJA funds? The . . . well, in this case, by looking at the facts and circumstances in front of the court, in this case . . . Well, where do the facts commence? It's by the affidavit, right, from the defendant, you know, setting forth its financial circumstances. Your Honor, in this case, Judge Reel did not require a financial affidavit. Judge Reel appointed the federal public defender, and he appointed the federal public defender based on the facts and circumstances known to him. Appointed the federal public defender when? In this case? Yes, in this case. When? For . . . so there was . . . there was the first trial, and then . . . He was represented by . . . he was . . . was he represented by private counsel at the first trial? He had retained counsel. He then got the federal public defender for sentencing. The federal public defender then got the expert, Dr. Castellano. And so this case clearly demonstrates what . . . And then he let . . . he terminated the federal public defender, correct? Correct. And he hired retained counsel for the second trial? At a greatly reduced rate. That doesn't make any difference whether it's a greatly reduced rate. He hired retained . . . he retained private counsel. Right, a friend of him was willing to represent him. But that doesn't . . . I mean . . . No, but that shows he had some funds, right? He did, but he also . . . what Judge Reel . . . After that, he never filed another affidavit, did he? He, meaning the defendant? He didn't, and the court . . . In fact, there's no showing that, you know . . . Is there a showing at what the psychologists were . . . whether or not there was any attempt to get the psychologists to reduce their rate like the attorney reduced his rate? I don't think there's any showing of that, Your Honor. But Judge Reel knew that he had $48,000 student loans. He knew what his income was combined with his wife. And the application from the attorney clearly shows that there weren't funds. From the attorney? Yes. You're saying the attorney testified as to the funds of the defendant? Is that what you're telling me? No, Your Honor. The attorney, who's an officer of the court, filed a motion with the court indicating that . . . That that's supposed to substitute for evidence? He made a representation, right? The attorney. Yes, he did. In his argument, in his memorandum. That's not evidence, is it? It's not evidence, but . . . So, my question is, again, what showing is there under the CJA that he was qualified for indigent funds? First of all, he was appointed . . . the federal public defender was appointed to represent him. I know. You went over that before, but it just passes. After that time, he hired another attorney. The 2012 pre-sentence report summarizes a signed financial affidavit, which stated that Andrews was unemployed. He owed $48,000. I know that, but that doesn't matter. I mean, after the attorney . . . after the public defender was appointed, he retained private counsel. That doesn't mean you can't have funds for an expert. Right. I know it doesn't mean either way, but the point is, he's got to show that he's qualified, and he made no showing after that time. I'm trying to state how he made the showing, Your Honor. No, but all your . . . everything you're saying goes to what happened before. He owed $48,000 in student loans. That didn't go away. He owed $200 on his credit card. He and his wife only made $2,585 in . . . I mean, their monthly expenses were $2,585. He exhausted his financial resources hiring a private attorney at a, quote, significantly reduced rate. So this isn't like . . . so the only thing the government cites for this proposition that you have to file a financial affidavit, which there is no rule requiring that, the court just needs to make a finding that you are indigent, which the court made by appointing the federal public defender. And the fact that he then later . . . You asked the defendant to fill out an affidavit. Which the defendant did and gave to the pretrial . . . And you don't think here that he wasn't . . . he shouldn't have filed another affidavit at the time he terminated his public . . . the public defender and hired retained counsel and then asked for CJA funds? I don't. I think that the application filed by the attorney was sufficient, and if I may, please reserve the remainder of my time. Well, let me ask this, though. Judge Reel, he just simply refused the request to hire . . . to . . . for funds for the psychologist, right? He didn't say why he refused it. He said the good cause wasn't shown. He what? He said the good cause was not shown. Right. Which is irrational since he had said that it would result in an acquittal. Well, good cause could mean, you know, a financial showing. But the point is, he was not specific about . . . He did not. That's correct. But he certainly did not make a . . . there's no finding by the Court that he had funds to pay for the expert. Good morning, Your Honors. May it please the Court. Ryan Weinstein on behalf of the United States. This case presents a narrow issue, and that is whether the district court clearly abused its discretion by denying the defendant's request for extra public funds to pay for his expert's 15 hours of unspecified trial preparation. Do you think that Judge Reel made a . . . just appointed the public defender's office or the . . . I'm sorry. Do you think Judge Reel simply appointed the public defender's office without making some sort of assessment that Mr. Andrews couldn't hire counsel? I can only assume he did, but there is nothing in the record on that point. But the fact is, the district court appointed the public defender in 2012. This application for CGA funds was made two years later by a private attorney in 2014. In the interim, the defendant had fired his publicly appointed lawyer and retained new counsel. So it was far from a foregone conclusion in 2014, in July 2014, when this application was made, that the defendant was in fact indigent. And it was the defendant's burden to carry here. And yet the application that the defendant filed with the Court contained no CGA form 23, no financial affidavit, not any even detailed financial information about the defendant's current financial condition. Well, there is some. As counsel argued, you know, there is some, I'll call it, at the very least, circumstantial evidence of the defendant's financial circumstances. But the problem we have, you know, is not unusual in Judge Reel cases, is, you know, he didn't say really why he refused the request, right? Well, he did say in his order that no good cause was shown. Does that mean that it's not because he was not qualified financially? Certainly. Good cause goes to the what, the merits of the showing? Yes. So in other words, then implicitly Judge Reel found that he was financially qualified if he went to the merits, right? No. Do you agree with that? No. Respectfully, Your Honor, I think good cause encompasses the showing of indigence because the two requirements of obtaining CJA funds are indigence and a need for the requested services. And later in the Court's denial of the defendant's motion for bail pending appeal, the Court referred to the quote, unquote, supposed indigent status of the defendant. So clearly the district court had doubts about the defendant's indigent status because after the Court had appointed the public defender, the defendant promptly fired that public defender, hired a new counsel, and then, only then, asked for funds claiming indigence. And yet before the Court was no evidence of the defendant's current financial condition, and certainly no evidence properly attested to by someone with foundation or personal knowledge of the defendant's finances. All right. Well, if we assume, and it's, you know, we just have to do our inferences. But assume for a minute that Judge Rios' bottom line finding of, you know, denied because of lack of showing of good cause went to the merits. Well, what's your argument on the merits? Do you think he was correct on the merits, too? Yes. I think there were other reasons why the district court did not abuse its discretion here. Setting aside the failure to show indigence, the defendant's application really makes no showing of why the defendant needed the funds, especially given that the experts' reports contain nothing relevant to the issue of intent or really any of the other issues in the case. Under this Court's ruling or holding in Rodriguez-Lura, the defendant was required at the very least to make some kind of, quote, unquote, substantial showing sufficient to warrant further inquiry. When you say the report, you're talking about the first report that the psychologist filed? The psychologist filed two reports, and those are the reports I'm referring to, Your Honor. Well, which was the basis of granting the new trial? Yes, Your Honor. Are you saying there was nothing in those reports that were, I don't know what the standard is, would be helpful to the defense? Is that your position? My position is, looking at what's actually in the reports, there is nothing in there to suggest that the defendant was confused, that the defendant was incapable of deceiving or cheating his former friend. There is nothing in there about the defendant somehow being unable to distinguish between unauthorized or authorized credit card charges. There's nothing in that report to suggest that the defendant was unable to distinguish between his property and someone else's. Let me ask you, what was in the report that caused Judge Reel to grant a new trial? That's a fair question, Your Honor. I'm not sure I can answer that, but the only question before this Court is whether There must have been something. There was a motion, wasn't there, to grant a new trial? Absolutely. There was a motion for a new trial brought. The Court granted that motion. But the Court's findings are obviously not binding on this Court. The government obviously disagrees with them. The only issue now before this Court is whether the District Court abused its discretion when ruling in July 2014 on the application for new funds. Let me ask you, at the second trial, was the old report introduced? No. Or the testimony of the psychologist brought in as what? Because she was no longer available or something like that? But she wasn't. Well, we don't know. The record at best is muddled on the issue of why defense counsel did not call the expert. There were representations in the middle of trial, including at the government's excerpts 173, in which the defense lawyer is telling government counsel, here are the witnesses we plan to call. That includes this expert, Dr. Castellano, mentioning nothing of the supposed financial difficulties that made it an impossibility to call her. And it's only post-conviction in a sentencing brief that the defendant states, oh, we couldn't have – we wanted to call her. There was no way we could have called her, basically trying to preserve the appellate issue that the defendant is now arguing today. But at best, Your Honors, the record is muddled on that point. I would argue the record actually shows that it was a strategic decision here not to call Dr. Castellano, and there were good reasons not to call her. Did Judge Reel at some point review the two other reports? Both reports were before the court in connection with the new trial motion, Your Honor. So Judge Reel did review both reports. Well, I mean the two – The other. The other. The psychiatrist. The two psychiatric reports. The – Dr. Fairstein's report was submitted directly to the court for his review on the competency hearing. So that was reviewed by the court, and it was reviewed before July 2014 when the CJA application was submitted, Your Honor. That's what I – What about the second one? The second report was before the court. However, that was after the application was filed in July. That report was brought before the court. So Judge Reel wasn't aware of that at the time they made the CJA – Judge Reel had not read that report. He might have been aware that the government had called this expert and there were some findings made, but he had not read Dr. Martel's report. What he had read was Dr. Fairstein's report, and Dr. Fairstein's report not only debunked all the diagnoses that Dr. Castellano reported, but also – and I see my time is just about up. Okay. But also attacked the very factual premises of Dr. Castellano's opinion and highlighted for the court that what Dr. Castellano had said was contradicted by what the defendant was saying to others, including the probation office. I mean, just to take one example, one of the premises of Dr. Castellano's opinion was that the defendant had suffered this supposed brain tumor that had been removed as a child and that created these cognitive deficits. In fact, the defendant readily admitted there was no brain tumor. There was some growth on his scalp that he had removed. Another premises of Dr. Castellano's opinion was that he had a chaotic and abusive childhood, a terrible home life. That is directly the opposite of what the defendant told the probation office at a time when he had every incentive to be truthful and tell the probation officer just how difficult his childhood was. So it wasn't just a battle of the experts, a difference of opinion. By the time the application, the CJA application was filed, it was shown to rest on a very shaky factual premise that was contradicted by the defendant's own statements. The other reason why the defendant cannot show by clear and convincing evidence an abuse of discretion here is that he cannot show prejudice. Setting aside what we've just discussed, and that is that the expert's opinions were irrelevant to intent and the fact that the expert's opinions were debunked by two experts, including the court-appointed psychiatrist, and the fact that the expert's opinions were contradicted by the defendant's own statements, the expert's opinions would have made really little difference given the overwhelming evidence here of the defendant's intent. That evidence included at Trial Exhibit 7A, that's page 93 of the government's exorcism record, a text message from the defendant to the victim admitting that he had made use of the victim's credit card without authorization, and not only that, the defendant admitted that he knew what he had done was wrong. That piece of evidence in and of itself refused any notion that the defendant was confused about what he was doing, about whether he had authorization to do it, and that was just one piece of evidence among a myriad of other pieces of evidence, including confessions to law enforcement, evidence of flight, and the manner in which the scheme was conducted, which in and of itself was evidence of the defendant's intent. So what are you saying? Even if the psychologists were called and would testify, I assume similar to the earlier report she wrote, it wouldn't have helped them at all. That's precisely right. So there couldn't possibly be any prejudice. Exactly right. Okay. Thank you. Thank you, Counsel. Your Honors, in this case, it was a bench trial. Both trials were bench trials. So we really have to – I think it's important to focus on what Judge Reel said and what Judge Reel did. He found Mr. Andrews not guilty on Counts 6 through 14. He stated that the government hadn't shown intent. And so these are statements from the fact finder, and the fact finder said that Dr. Castellano's report probably would have resulted in an acquittal. So to then take an application from an attorney saying we need funds for that expert and to just handwrite on it, deny no good cause shown, is an abuse of discretion. And for the government today to say, oh, well, this is just the defense attorney – to say that it was a strategic decision lies in the face of what the defense attorney said. Were you the trial attorney? I was not. You know why – well, first of all, you know whether any attempt was made at the second trial to introduce that psychologist report? Well, the government – in the government's excerpt of the record, I think it's 173, there is an email saying that he still intended when the parties are talking back and forth about who their witnesses are going to be and the order of their witnesses. No, no, no, no. I'm getting a different question. I mean, assuming that the reason, although she was on the witness list, she was not called because the defendant didn't have the money, right? Correct. Assuming that's true, did the defense try to, you know, get the report or the testimony into the record in some other way, such as like prior testimony from the first trial because she was not available? So the first trial was a guilty, and it wasn't until after the first trial. She didn't testify at the first trial. Correct. Yeah, so there was no way to get her testimony unless she was willing to appear pro bono, and that did not happen. Okay. Well, what do you mean? You just said there's no way she would have appeared except pro bono. We don't know that. Right. I mean, if she had appeared pro bono, then she would have testified at the second trial. I mean, it's clear from the record that the attorney, both in his sentencing memorandum and his application to the court, wanted her testimony. Her testimony was essential. Any rational attorney is going to present her testimony when the finder of fact is giving you the playbook and saying, this is how you get an acquittal, is with this report. And the government makes a fair point that there's contradictory reports, but Judge Real was already aware of the contradictions that were already in the probation report when he made his decision. Okay, you're over your time. Thank you. Thank you very much. Thank you. Thank you.
judges: Reinhardt, Tashima, Paez